IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DEREK I. SWEET,
#K98426,

       Plaintiff,

vs.                                                   Case No. 17-CV-1363-DRH

PARTHA SARATHI GHOSH,
DR. JOHN TROST,
WEXFORD HEALTH SERVICES, INC.,
LATANYA WILLIAMS,
SHAWN BASS,
M. MOLDENHAUER,
JOHN/JANE DOE 1,
JOHN DOE 1,
JOHN DOE 2,
JOHN DOE 3,
JOHN DOE 4,
JOHN DOE 5,
JOHN DOE 6,
JOHN DOE 7,
JOHN DOE 8,
JOHN DOE 9, and
C/O SCHULTZ,

       Defendants.

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

### I. OVERVIEW

Plaintiff Derek I. Sweet, an inmate currently housed at Stateville Correctional Center ("Stateville"), filed this *pro se* action pursuant to 42 U.S.C. § 1983. Plaintiff brings three sets of claims relating to constitutional violations that

1

allegedly occurred at Menard Correctional Center ("Menard") and Stateville over a 10 year period. The first set of claims allegedly occurred at Menard from October 1, 2006 to March 11, 2007 ("2006/2007 Menard Claims"). During this time, Plaintiff claims he was subjected to excessive force, resulting in a serious injury to his left arm/elbow. According to the Complaint, Plaintiff was also denied medical care for this injury. On March 11, 2007, Plaintiff was transferred to Stateville, which leads to Plaintiff's second set of claims ("Stateville Claims"). Plaintiff contends that while he was housed at Stateville, various Stateville officials exhibited deliberate indifference to his left arm/elbow injury and/or retaliated against him for filing grievances pertaining to the same. Plaintiff was returned to Menard in March 2010, leading to Plaintiff's third set of claims. Plaintiff generally alleges that after returning to Menard in March 2010, unspecified officials (usually generic groups such as "staff") denied him necessary medical care in connection with his left arm/elbow injury. The only allegations associated with specific defendants, however, are directed at a physician and physician's assistant who were allegedly deliberately indifferent to Plaintiff's left arm/elbow injury in 2017. Accordingly, the Court refers to the third set of claims as the "2017 Menard Claims."

Plaintiff was transferred back to Stateville on November 21, 2017, and is presently incarcerated there. Plaintiff does not assert any additional claims against any specific official at Stateville following his most recent transfer. However, he does allege that his chronic left arm/elbow pain continues and that he

is still in need of medical care. (Doc. 1, pp. 25—26). Plaintiff seeks monetary damages and injunctive relief. (Doc. 1, p. 28). Plaintiff's request for injunctive relief includes a request to be seen by an outside specialist. *Id.* The body of the Complaint also includes additional requests for surgical intervention and other specific medical care. (Doc. 1, p. 25).

In connection with his claims, Plaintiff names the following Defendants:

**2006-2007 Menard Claims**

1. John/Jane Doe – 1 2006/2007 Medical Director, Menard CC;
2. John Doe – 1 C/O Menard CC);
3. John Doe – 2 C/O Menard CC);
4. John Doe – 3 Lieutenant, C/O, Menard CC);
5. John Doe – 4 Sargent, C/O Menard CC);
6. John Doe – 6 C/O Menard CC also known as Big E/East House Gallery Officer;[1]
7. John Doe – 7 Lieutenant, C/O, Menard CC;[2] and
8. John Doe – 8 Sargent, C/O Menard CC.[3]

**Stateville Claims**

1. John Doe – 10 Lieutenant, C/O, Stateville CC;[4]

---

[1] Plaintiff does not include a John Doe 5 in his list of defendants. The list of defendants includes a "John Doe # 6 (Big E)." (Doc. 1, p. 4). The body of the Complaint describes John Doe # 6 as being the East House Gallery Officer or "John Doe EH-6." (Doc. 1, pp. 10-12). To facilitate the orderly progress of this action going forward, the Clerk shall be directed to rename the John Doe *5 –C/O, Menard CC also known as Big E* Defendant as follows: John Doe *6 C/O, Menard CC also known as Big E/East House Gallery Officer*. *See* FED. R. CIV. P. 21 ("the court may at any time, on just terms, add or drop a party").

[2] To facilitate the orderly progress of this action going forward, the Clerk shall be directed to rename the John Doe *6 – Lieutenant, C/O, Menard CC* Defendant as follows: John Doe *– 7 Lieutenant, C/O, Menard CC*. *See* FED. R. CIV. P. 21 ("the court may at any time, on just terms, add or drop a party").

[3] To facilitate the orderly progress of this action going forward, the Clerk shall be directed to rename the John Doe *7 – Sargent, C/O, Menard CC* Defendant as follows: John Doe *– 8 Sargent, C/O, Menard CC*. *See* FED. R. CIV. P. 21 ("the court may at any time, on just terms, add or drop a party").

[4] To facilitate the orderly progress of this action going forward, the Clerk shall be directed to rename the John Doe *8 – Lieutenant, C/O, Stateville CC* Defendant as follows: John Doe *– 10*

     2. John Doe – 9 Sargent, C/O Stateville CC;
     3. C/O Schultz – Stateville CC; and
     4. Latanya Williams – Stateville Physician Assistant;
     5. Shawn Bass – X House Counselor, Placement Officer, Stateville CC;
     6. Partha Sarathi Ghosh – Stateville Medical Director

**2010-2017 Menard Claims**
     1. Dr. John Trost – Menard Medical Director and
     2. M. Moldenhauer – Dr., Physician Assistant, Wexford Medical Services, Inc.

**Wexford**

Wexford is identified as a defendant in Plaintiff's list of defendants. However, the body of the Complaint does not include any allegations directed against Wexford. A plaintiff "cannot state a claim against a defendant [merely] by including the defendant's name in the caption" of the complaint. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Black v. Lane*, 22 F.3d 1395, 1401 and n. 8 (7th Cir. 1994) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed."). Accordingly, Wexford shall be dismissed from this action without prejudice for failure to state a claim upon which relief can be granted.

## II. PRELIMINARY REVIEW AND SEVERANCE

The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The

---

*Lieutenant, C/O, Stateville CC.* *See* FED. R. CIV. P. 21 ("the court may at any time, on just terms, add or drop a party").

Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

The Complaint is also subject to severance by this Court. The Court retains authority to sever unrelated claims against different defendants into one or more additional lawsuits for which Plaintiff will be assessed a filing fee. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George*, the Seventh Circuit emphasized that the practice of severance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id.* The Seventh Circuit strongly encourages district courts to use severance when faced with an omnibus or scattershot complaint, *Owens v. Evans*, -- F.3d --, 2017 WL 6728884, *1 (7th Cir. Dec. 28, 2017), and discourages courts from allowing a prisoner "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). In a misjoinder situation, severance may occur before preliminary review, allowing the district court to create multiple suits, which can then be separately screened. *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 683 (7th Cir. 2012).

### III. THE COMPLAINT

**Preliminary Matter**

Plaintiff directs a number of allegations against individuals not named in the case caption or list of defendants (*e.g.,* various Jane Does, warden, John Doe 16…) and/or improper groups of defendants (*e.g.,* Stateville Staff, Orange Crush, Medical Staff, F-House Staff…). To the extent that Plaintiff intended to assert claims against these individuals and/or groups of individuals, those claims are dismissed without prejudice for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir.2005) (to be properly considered a party a defendant must be "specif[ied] in the caption"); *Jenkins v. Wisconsin Resource Ctr.*, No. 09–cv–323–bbc, 2009 WL 1797849, at *1 (W.D. Wis. June 24, 2009) (a group of people cannot be sued; each defendant must be an individual or legal entity that may accept service of a complaint).

Additionally, a number of Plaintiff's allegations are not associated with any identifiable individual (known or unknown). For instance, Plaintiff generally alleges that, when he was returned to Menard in 2010, he was left in handcuffs for an excessive amount of time, further injuring his left arm/elbow (Plaintiff makes similar allegations pertaining to his most recent transfer to Stateville in 2017). Claims that are not associated with any particular defendant fail to state a claim upon which relief can be granted and should be considered dismissed without

prejudice. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Fed. R. Civ. P. 8(a)(2).

**2006/2007 Menard Claims**

Plaintiff alleges that, on October 1, 2006, he was the victim of excessive force. (Doc. 1, pp. 8-9). According to the Complaint, Plaintiff was involved in an altercation with another inmate. (Doc. 1, p. 8). Several correctional officers subdued Plaintiff and sprayed him twice with pepper spray. *Id.* Plaintiff alleges that while he was in compliance and lying on his stomach ("spread eagle style"), John Doe 1, a correctional officer, drove his knees into Plaintiff's shoulders, leaving Plaintiff's head between his legs. *Id.* John Doe 2, a correctional officer, then assisted John Doe 1 handcuff Plaintiff behind his back. *Id.* After Plaintiff was handcuffed, John Doe 2 kicked him in the left side of his face, near his ear. *Id.* John Doe 2 then stomped and stood on Plaintiff's left arm/elbow. (Doc. 1, p. 9). Plaintiff screamed in pain. *Id.* John Doe 2 then rocked back and forth while standing on Plaintiff's left arm/elbow. *Id.* John Doe 2 did this four or five times. *Id.* At that point, Plaintiff lost consciousness from the pain. *Id.*

As a result of the excessive force incident, Plaintiff's left arm and elbow were severely injured. (Doc. 1, p. 9). Plaintiff did not receive immediate medical care for his injury. *Id.* Instead, Plaintiff was escorted to segregation, where he remained for 90 days. (Doc. 1, pp. 9-10). While Plaintiff was in segregation, John Doe 3, a lieutenant in the N2 cell house, and John Doe 4, a sergeant in the N2 cell house, denied Plaintiff's requests for medical care. (Doc. 1, p. 9).

Additionally, grievances sent to John/Jane Doe 1 (the Medical Director at Menard in 2006/2007) went unanswered.

Plaintiff claims his arm was reinjured during a second excessive force incident on February 7, 2007. According to the Complaint, John Doe 6 intentionally reinjured Plaintiff's left arm while handcuffing him. (Doc. 1, pp. 10-12). Plaintiff claims that John Doe 6, John Doe 7, and John Doe 8 refused Plaintiff's requests for medical attention in connection with this incident. (Doc. 1, p. 12). Additionally, they told Plaintiff to "shut the fuck up." *Id.*

Plaintiff filed a grievance pertaining to this incident and, three days later, his cell was tossed. *Id.* Plaintiff asked John Doe 6 if this was an act of retaliation for the grievance. *Id.* John Doe 6 responded by telling Plaintiff's cellmate their cell had been searched because of Plaintiff and suggested that Plaintiff's cellmate should assault Plaintiff. *Id.*

Plaintiff was transferred to Stateville on March 11, 2007. (Doc. 1, p. 13).

**Stateville Claims**

Plaintiff claims that, between 2007 and 2010, he continued to suffer from a left arm/elbow injury. (Doc. 1, p. 13). According to the Complaint, upon arrival at Stateville, his left arm/elbow was swollen and discolored, with "extreme bruising and chronic nonstop throbbing." *Id.* He claims the chronic pain and swelling has interfered with his everyday life. (Doc. 1, pp. 13-14).

When Plaintiff first arrived at Stateville he was placed in X-house. (Doc. 1, p. 14). Plaintiff complained about his left arm/elbow injury to several "Stateville

staff in X-house." *Id.* Specifically, Plaintiff showed John Doe 9 his left arm/elbow and requested medical attention. *Id.* Additionally, a number of unknown officers observed his arm. *Id.* The X-house officials that observed Plaintiff's injury were in "shock." *Id.* John Doe 10[5] ordered other correctional officers to take Plaintiff to HCU. (Doc. 1, p. 15).

La Tanya Williams, a physician's assistant, and a number of individuals identified as Jane Does (who are not identified as defendants in Plaintiff's caption or list of defendants) subsequently came to Plaintiff's cell and commented on the seriousness of his injury. (Doc. 1, pp. 14-15). They immediately escorted Plaintiff to the HCU. (Doc. 1, p. 15). Plaintiff's arm was examined and he was returned to his cell. *Id.*

A few days later, Plaintiff was returned to the HCU at the request of Williams. *Id.* Williams and an unidentified member of the medical staff questioned Plaintiff. Plaintiff indicated he had been the victim of excessive force at Menard. *Id.* Williams said she would be fired in retaliation if she reported Plaintiff's injuries in writing. (Doc. 1, p. 16). Plaintiff did not receive x-rays, pain medication, or, in his opinion, appropriate emergency treatment for his injury. *Id.*

Plaintiff alleges he communicated with Bass, a grievance counselor, both in person and in writing, regarding his need for medical treatment. (Doc. 1, pp. 16-17). All of Plaintiff's requests were ignored and his grievances were unanswered.

---

[5] Plaintiff's list of Defendants includes an individual identified as John Doe 10 – Lieutenant, C/O, Stateville CC. (Doc. 1, p. 5, (Doc. 1, p. 5). The body of the Complaint references Jane Doe 10 who is described as a Lieutenant at Stateville. (Doc. 1, p. 15).

9

*Id.* Plaintiff also directed grievances to Ghosh, Stateville's Medical Director, regarding his need for medical treatment. (Doc. 1, p. 19). However, Plaintiff's grievances were ignored. *Id.*

After filing a number of grievances, Plaintiff's cell was searched. (Doc. 1, p. 17). Plaintiff asked Schultz, a correctional officer, for a "shake-down slip." *Id.* Schultz told Plaintiff to "go to hell." (Doc. 1, p. 18). Plaintiff also alleges that after he filed emergency grievances seeking medical treatment, Schultz retaliated by "tossing" his cell. *Id.*

Plaintiff was transferred back to Menard in March 2010. (Doc. 1, p. 19). He remained at Menard from March 2010 through November 21, 2017. (Doc. 1, pp. 19-25). On November 21, 2017, Plaintiff returned to Stateville and is presently incarcerated there. Plaintiff does not direct additional allegations against any specific defendant following his most recent transfer. (Doc. 1, pp. 25-26). However, he alleges that he continues to suffer from chronic left arm/elbow pain and swelling. He also seeks injunctive relief in the form of medical care. (Doc. 1, pp. 25-28).

**2017 Menard Claims**

As noted above, Plaintiff returned to Menard in March 2010 and remained there until November 21, 2017. (Doc. 1, pp. 19-25). When Plaintiff arrived at Menard, he was handcuffed from 3:00 am to 6:00 pm. (Doc. 1, p. 19). During this time, Plaintiff suffered chronic pain, swelling, and numbness in his left arm/elbow. *Id.* Plaintiff does not associate these allegations with any particular

10

defendant.

Between 2010 and 2017, Plaintiff continued to experience chronic pain, swelling, numbness, and "bone on bone grinding" in his left arm/elbow. (Doc. 1, p. 20). The injury interfered with his daily life. *Id.* At times, the pain was so severe he has passed out in his cell. *Id.* Most of Plaintiff's claims pertaining to this time period are generalized and not associated with any specific individual. However, the Complaint does specifically reference Trost, Menard's Medical Director and a physician, and Moldenhauer, a physician's assistant. The allegedly wrongful conduct attributed to these individuals occurred in 2017. That conduct and other allegations pertaining to that time period are summarized below.

According to the Complaint, Plaintiff filed numerous grievances regarding his need for medical attention, some of which were directed to Trost,[6] but his complaints were ignored. (Doc. 1, pp. 19-20). Plaintiff specifically discusses a grievance he submitted on February 9, 2017. (Doc. 1, p. 20). The grievance provided "full detail" regarding his medical issues (chronic pain in his left arm/elbow and left ear). *Id.* He also "directed kites to Menard's medical staff in the Healthcare Unit and addressed to said supervisor on his issues." *Id.*[7]

On February 12, 2017, Plaintiff was issued a pass for sick call and was examined by an unidentified medical technician (not a defendant in this action).

---

[6] Plaintiff claims he submitted grievances to "Menard's Director." (Doc. 1, p. 19). This allegation appears to be directed at John Trost, a defendant identified by Plaintiff as Menard's Medical Director. (Doc. 1, p. 2). The Complaint suggests that Trost was not the Medical Director in 2006/2007 – Plaintiff has a designated a separate unknown party as "Jane/John Doe 1 Medical Director 2006-2007, Menard CC."

[7] Plaintiff has attached several grievances to his Complaint. (Doc. 1, pp. 39-40, 57-63).

11

(Doc. 1, p. 21). This individual prescribed Tylenol and returned Plaintiff to the Healthcare doctor. *Id.*

On February 17, 2017, Plaintiff was examined by Trost. *Id.* Trost "didn't want to hear about what happened." *Id.* He ordered an x-ray and prescribed Ibuprofen. *Id.* Plaintiff's x-ray was scheduled for February 22, 2017. *Id.* However, this appointment was cancelled without explanation. *Id.* Plaintiff's arm was finally x-rayed on February 28, 2017. *Id.* He was supposed to review his results with Trost on March 10, 2017. *Id.* However, this appointment was also cancelled without explanation.[8] *Id.*

On March 24, 2017 through March 26, 2017,[9] Plaintiff's elbow was popping and cracking. *Id.* It was also severely swollen and tender to the touch. *Id.* He experienced extreme pain and his left hand was numb for several days. (Doc. 1, p. 22). Because of his condition, Plaintiff had difficulty with daily activities. *Id.*

That weekend, Plaintiff told a gallery officer about his left arm/elbow and the need for medical treatment. *Id.* The officer took Plaintiff's name, number, and cell location. *Id.* He relayed the information to the sergeant and lieutenant on duty, however, nothing was done. *Id.* Plaintiff also showed a medical technician his injured arm, to no avail. *Id.* None of these individuals are identified as defendants in the Complaint.

---

[8] An exhibit attached to the Complaint discloses the following with regard to the x-ray: "There is osteoarthritis of the elbow joint with a small elbow joint effusion. No definite evidence of an acute bony fracture is seen on this examination." (Doc. 1, p. 35).

[99] Plaintiff submitted a grievance directed to the HCU on March 26, 2017. (Doc. 1, p. 37). He indicates that he is experiencing severe pain, swelling, and popping in his left arm/elbow. *Id.* He also states that the doctor diagnosed it as arthritis but insists the "issue is beyond arthritis." *Id.*

On the morning of March 26, 2017, Plaintiff's arm was extremely painful. (Doc. 1, p. 23). Plaintiff did not receive any medical treatment and did not receive a pass to the HCU. *Id.* On the same day, Plaintiff submitted grievances regarding (1) not receiving his x-ray results and (2) the continued denial of medical care. *Id.*

On March 28, 2017, Plaintiff was given a "verbal sick call announcement" and was seen by a medical technician. *Id.* Plaintiff does not indicate what, if any, treatment he received on this date.

On April 3, 2017, Plaintiff received a medical pass to see Moldenhauer. *Id.* The appointment was cancelled without explanation. *Id.* Plaintiff received another pass to see Moldenhauer on April 7, 2017. (Doc. 1, p. 24). This time, the appointment was not cancelled. *Id.* Plaintiff attempted to tell Moldenhauer about his medical issue, but Moldenhauer cut him off. *Id.* Moldenhauer also disregarded Plaintiff's request to see an outside specialist and refused to give Plaintiff an ice pack or elbow soaks. *Id.* Moldenhauer did not examine Plaintiff's arm or ask him to do muscle tests. *Id.*

## IV. DIVISION OF COUNTS

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order is dismissed without

prejudice as inadequately pled under the *Twombly* pleading standard.

**2006/2007 Menard Claims**

    **Count 1 –** On October 1, 2006, John Doe 2 subjected Plaintiff to excessive force in violation of the Eighth Amendment.

    **Count 2 –** On October 1, 2006, John Doe 1 failed to intervene in the alleged excessive force (occurring on October 1, 2006) in violation of the Eighth Amendment.

    **Count 3 –** John Doe 1, John Doe 2, John Doe 3, John Doe 4, and John/Jane Doe 1 showed deliberate indifference to Plaintiff's serious medical needs resulting from the alleged excessive force (occurring on October 1, 2006) in violation of the Eighth Amendment.

    **Count 4 –** On February 7, 2007, John Doe 6 subjected Plaintiff to excessive force in violation of the Eighth Amendment.

    **Count 5 –** John Doe 6, John Doe 7, and John Doe 8 showed deliberate indifference to Plaintiff's serious medical needs resulting from the alleged excessive force (occurring on February 7, 2007).

    **Count 6 –** John Doe 6 retaliated against Plaintiff for filing a grievance regarding the alleged use of excessive force (occurring on February 7, 2007) by tossing his cell and encouraging Plaintiff's cellmate to assault him.

**Stateville Claims**

    **Count 7 –** John Doe 9, John Doe 10, Williams, Bass, and Ghosh showed deliberate indifference to Plaintiff's serious medical condition (injury to left arm/elbow and associated chronic pain) in violation of the Eighth Amendment.

    **Count 8 –** Schultz retaliated against Plaintiff for filing grievances by "tossing" his cell in violation of the First Amendment.

**2017 Menard Claims**

    **Count 9 –** In 2017, Trost and Moldenhauer exhibited deliberate

indifference to Plaintiff's serious medical condition (injury to left arm/elbow and associated chronic pain) in violation of the Eighth Amendment.

## V. IMPROPER JOINDER AND SEVERANCE

Plaintiff has brought three distinct sets of claims: (1) 2006/2007 Menard Claims (Counts 1 through 6); (2) Stateville Claims (Counts 7 through 8, which include a request for injunctive relief); and (3) 2017 Menard Claims (Count 9). Although many of the claims involve officials who were allegedly deliberately indifferent to the same medical condition (Plaintiff's arm injury), the three sets of claims are not properly joined under Rules 18 and 20 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 18, 20; *Owens v. Evans*, -- F.3d --, 2017 WL 6728884, *1 (7th Cir. Dec. 28, 2017). The claims involve different defendants who allegedly committed independent acts of deliberate indifference and/or retaliation, at two different prisons, over a ten year period. These claims are capable of resolution independently. Accordingly, the Court will exercise its authority under Rule 21 and sever the improperly joined claims.

The Court shall sever the Stateville claims (Counts 7 and 8, which include a request for injunctive relief) into a separate action and 2017 Menard claims (Count 9) into another action. These two separate actions, for Counts 7 and 8 and Count 9, will have newly assigned case numbers and shall be assessed filing fees. The severed cases shall undergo preliminary review pursuant to § 1915A after the new case numbers and judge assignments have been made.

Counts 1 through 6, which appear, at least tenuously, to be transactionally

related, shall remain in this action. These Counts shall receive preliminary review in a separate order, filed contemporaneously herewith.

## VI. DISPOSITION

**Wexford**

**IT IS HEREBY ORDERED** that **WEXFORD HEALTH SERVICES, INC.** is **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted. The Clerk of the Court is **DIRECTED** to terminate this entity as a party in CM/ECF.

**Renaming Certain John Doe Defendants**

The numbering assigned to certain John Doe Defendants in CM/ECF does not reflect the numbering utilized by Plaintiff in his list of defendants and in the body of the Complaint. Accordingly, to facilitate the orderly progress of this action going forward, the Clerk is **DIRECTED** to rename certain John Doe Defendants:

- The Clerk shall rename the John Doe *5 –C/O, Menard CC also known as Big E* Defendant as follows: John Doe *6 C/O, Menard CC also known as Big E/East House Gallery Officer.*

- The Clerk shall rename the John Doe *6 – Lieutenant, C/O, Menard CC* Defendant as follows: John Doe – *7 Lieutenant, C/O, Menard CC.*

- The Clerk shall rename the John Doe *7 – Sargent, C/O, Menard CC* Defendant as follows: John Doe – *8 Sargent, C/O, Menard CC.*

- The Clerk shall rename the John Doe *8 – Lieutenant, C/O, Stateville CC* Defendant as follows: John Doe – *10 Lieutenant, C/O, Stateville CC.*

16

**Severance**

IT IS HEREBY ORDERED that **COUNTS 7** and **8,** which includes Plaintiff's request for injunctive relief(**"Stateville Claims"), are SEVERED** into a new case against **JOHN DOE 9**, **JOHN DOE 10**, **WILLIAMS**, **BAS**S, **GHOSH**, and **SCHULTZ**.

IT IS FURTHER ORDERED that **COUNT 9** ("2017 Menard Claims") are **SEVERED** into a new case against **TROST** and **MOLDENHAUER**.

IT IS FURTHER ORDERED that the <u>**only claims remaining in this action, are COUNTS 1 through 6 ("2006/2007 Menard Claims").**</u>

**Newly Severed Cases**

The claims in the newly severed cases: (1) Stateville Claims, Counts 7 and 8, which include Plaintiff's request for injunctive relief, and (2) 2017 Menard Claims, Count 9 shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made.  In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1);
- Plaintiff's motion to proceed *in forma pauperis* (Doc. 2); and
- Plaintiff's Motion for Recruitment of Counsel (Doc. 3).

Plaintiff **will be responsible for an additional $350 filing fee** in the newly severed cases.[10]  No service shall be ordered in the severed cases until the § 1915A review is completed.

---

[10] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status is granted.

The newly severed cases shall be captioned as follows:

**Stateville Claims, Counts 7 and 8**

- **DEREK I. SWEET**, Plaintiff vs. **JOHN DOE 9** *Sargent, C/O, Stateville CC*, **JOHN DOE 10** *Lieutenant, C/O, Stateville CC*, **PARTHA SARATHIS GHOSH** *Stateville Medical Director*, **LATANYA WILLIAMS** *Stateville Physician Assistant*, **SHAWN BASS** *X House Counselor, Placement Officer, Stateville CC*, and **C/O SCHULTZ** *Stateville CC, Defendants*.

**2017 Menard Claims, Count 9**

- **DEREK I. SWEET**, Plaintiff vs. **DR. JOHN TROST** *Menard Medical Director* and **M. MOLDENHAUER** *Dr., Physician Assistant, Wexford Medical Services, Inc.*, Defendants.

**Merits Review of 2006/2007 Menard Claims - Counts 1 -6**

These Counts shall receive preliminary review in a separate order, filed contemporaneously herewith.

**IT IS SO ORDERED.**

Judge Herndon
2018.01.16
11:54:25 -06'00'

United States District Court