# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEREK I. SWEET, # K-98426,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-cv-097-JPG |
| | ) |
| **JOHN TROST,** | ) |
| **and M. MOLDENHAUER,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is before the Court for a preliminary merits review pursuant to 28 U.S.C. § 1915A. On January 16, 2018, this Court ordered the claim in this this *pro se* § 1983 civil rights action (identified as Count 9 in the original case) to be severed from Plaintiff's original case, *Sweet v. Ghosh, et al.*, Case No. 17-cv-1363-DRH. (Doc. 1). Plaintiff is currently incarcerated at Stateville Correctional Center ("Stateville"). The claim in this case arose at Menard Correctional Center ("Menard") in 2017, and was outlined by the Court in Case No. 17-cv-1363 as follows. For clarity, the Court shall continue to refer to this claim as Count 9 in this action:

> **Count 9 –** In 2017, Trost and Moldenhauer exhibited deliberate indifference to Plaintiff's serious medical condition (injury to left arm/elbow and associated chronic pain) in violation of the Eighth Amendment.

### The Complaint (Doc. 2)

According to the Complaint, Plaintiff's left arm and elbow were seriously injured in an incident of excessive force that he experienced at Menard in 2006. (Doc. 2, pp. 8-9). He claims that a correctional officer stood on his left arm and stomped on it while he was lying on the floor with his hands cuffed behind his back. *Id.* In February 2007, Plaintiff's arm was reinjured in a

1

second excessive force incident. (Doc. 2, pp. 10-12). (Those incidents were the subject of claims designated in the original case as Counts 1 and 4, which remained in that case and have been dismissed as barred by the statute of limitations.) Subsequent to those injuries, Plaintiff was transferred to Stateville. In March 2010, he was again sent to Menard, where he remained until November 21, 2017, when he was returned to Stateville. (Doc. 2, pp. 19-25).

Plaintiff has continued to suffer from chronic pain and swelling, throbbing, numbness, and "bone-on-bone grinding" in his left arm and elbow. (Doc. 2, p. 20). At times, the pain is so extreme that it has caused him to lose consciousness, scream, and urinate in his pants. *Id.* There is a "crook" in his arm and his range of motion is impaired. *Id.* Plaintiff is left-handed, so the injury further complicates his daily activities. (Doc. 2, p. 14).

On February 9, 2017, Plaintiff filed grievances and sent a "kite" to medical staff, seeking treatment for his chronic pain. (Doc. 2, pp. 20, 38, 62-63). His grievance included "full detail" of his symptoms, including the ongoing pain in his left arm/elbow and his left ear.[1] *Id.*

On February 12, 2017, Plaintiff was issued a pass for sick call. He saw a medical technician, who gave him Tylenol and referred him to the doctor. (Doc. 2, p. 21).

Plaintiff saw Dr. Trost on February 20, 2017. Trost "didn't want to hear what Plaintiff had to say" about his condition, but he ordered an x-ray and 800 mg of Ibuprofen. (Doc. 2, p. 21). The x-ray was scheduled for February 22, 2017, but was then cancelled without explanation. On February 28, 2017, Plaintiff's arm was x-rayed. He was given an appointment for March 10, 2017, to review the x-ray results with Dr. Trost, but that appointment was also

---

[1] Plaintiff states that in 2007 he lost hearing in his left ear; he requested treatment while he was at Stateville, but nothing was done. (Doc. 2, p. 18).

cancelled.² *Id.* Plaintiff attaches a grievance dated March 23, 2017, stating that he saw another doctor on that day regarding his x-ray results, and was told he had arthritis. (Doc. 2, p. 57). In the grievance, Plaintiff disputed this conclusion, based on his symptoms of popping and cracking noises, numbness, and sharp pain in his elbow. He then described how on the night of March 23, 2017, his elbow popped and cracked when he reached for his coffee cup, causing shooting pain and then rapid swelling from his elbow to the upper arm. (Doc. 2, p. 58).

On March 24, 25, and 26, 2017, Plaintiff's left arm/elbow was popping and cracking. (Doc. 2, p. 21). It was also severely swollen and tender to the touch, especially when Plaintiff moved his arm to reach for anything. (Doc. 2, p. 22). His ring finger and pinky finger on his left hand were numb for 3-4 days. This condition made it very hard for Plaintiff to perform routine activities such as washing up, brushing his teeth, and dressing himself. *Id.*

Plaintiff made several attempts between March 24 and 26, 2017, to obtain medical attention. He notified a gallery officer, who took down Plaintiff's name, number, and cell location, and informed the Sergeant and Lieutenant. However, Plaintiff was not taken to Health Care or given an ice pack. (Doc. 2, pp. 22, 59). Plaintiff showed his swollen arm to a medical technician making rounds on the gallery, and asked for an ice pack, but he was ignored. (Doc. 2, p. 22). These individuals are not included as Defendants in the Complaint.

On March 26, 2017, Plaintiff woke up to severe throbbing pain in the arm, and needed to do "hot/cold treatments" for 30-45 minutes before his arm would loosen up enough to function. (Doc. 2, p. 23). He submitted 2 grievances; one over not receiving his x-ray results, and the

---

² An exhibit attached to the Complaint discloses the following with regard to the x-ray: "There is osteoarthritis of the elbow joint with a small elbow joint effusion. No definite evidence of an acute bony fracture is seen on this examination." (Doc. 2, p. 35).

other over the denial of medical assistance by correctional officers.[3]

On March 28, 2017, Plaintiff was given a "verbal sick call announcement" and was seen by a medical technician, whom he told about his left arm/elbow symptoms. He does not indicate what, if any, treatment he received on that date. That evening, Plaintiff submitted FOIA requests for his medical records and grievances. (Doc. 2, p. 23).

On April 3, 2017, Plaintiff received a medical pass to see Physician Assistant Moldenhauer, however, the pass was cancelled without explanation. *Id.* Plaintiff continued to suffer with numbness, swelling, popping and cracking, and shooting pain from his left elbow down to his fingers. (Doc. 2, pp. 23-24).

On April 7, 2017, Plaintiff saw Moldenhauer. Plaintiff attempted to tell Moldenhauer about his medical issues, but Moldenhauer cut him off and would not listen. (Doc. 2, p. 24). Moldenhauer also disregarded Plaintiff's request to see an outside specialist and refused to give Plaintiff an ice pack or elbow soaks. *Id.* Moldenhauer did not examine Plaintiff's arm or ask him to do muscle tests. (Doc. 2, pp. 24, 60-61).

Plaintiff seeks compensatory and punitive damages, and a referral to an outside specialist for treatment. (Doc. 2, p. 28).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.

---

[3] Plaintiff includes a copy of a written request for treatment, dated March 26, 2017 and directed to the HCU, which states that he was experiencing severe pain, swelling, and popping in his left arm/elbow. (Doc. 2, p. 37). He also states that the doctor diagnosed it as arthritis, but insists the "issue is beyond arthritis." *Id.*

28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that Plaintiff's claims in **Count 9** survive threshold review under § 1915A.

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An

5

objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff's initial arm injury, and his ongoing chronic pain, swelling, and impairment satisfy the objective component of an Eighth Amendment claim. As to the subjective element, Plaintiff's written requests for treatment in February 2017, as well as his visit to Dr. Trost, informed Trost of Plaintiff's persistent symptoms. Trost initially took the reasonable measure of scheduling Plaintiff for an x-ray, and ordered Ibuprofen for him. However, Trost apparently did nothing further to follow up, and it was nearly a month before Plaintiff saw a different doctor to learn about his x-ray results, on March 23, 2017. Arguably, the delay in treatment and lack of any follow-up to Plaintiff's x-ray or further evaluation to treat his severe symptoms could support a deliberate indifference claim against Dr. Trost.

When Plaintiff experienced an acute episode of shooting pain, swelling, and numbness on March 24, 2017, he was unable to obtain medical attention until April 7, 2017, when he saw Moldenhauer. Despite Plaintiff's attempts to explain his symptoms, Moldenhauer refused to even examine Plaintiff, give him any treatment, or refer him to a specialist or another practitioner within the prison. Moldenhauer's failure to take any steps to address Plaintiff's condition may also support a deliberate indifference claim.

Accordingly, the claims in **Count 9** shall proceed for further consideration against both Defendants.

The Court notes, however, that Plaintiff's request for injunctive relief appears to be moot in this severed action. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Menard under the conditions described in the Complaint, would it be proper for the Court to consider injunctive relief. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)).

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 4) shall be referred to the United States Magistrate Judge for further consideration.

**Disposition**

The Clerk of Court shall prepare for Defendants **TROST** and **MOLDENHAUER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the

7

Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 4).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 7, 2018**

*s/J. Phil Gilbert*
United States District Judge